Good morning. May it please the Court, my name is Stuart Kulinski. I represent the petitioner Mr. Barekzai. In reviewing the record, I see that the only issue is the applicability of this Court's decision in Castillo-Viagra. Everyone agrees that there have been changes in Afghanistan in the lifetime of this case. The Board of Immigration Appeals stated that, yes, things remain unstable. And, yes, the Taliban government is gone, but elements of the Taliban are there. Mr. Barekzai may or may not be in danger under present circumstances. The record is silent as to that. And the only thing I would like to add, although it's not in this case, I had another case from the BIA from Iraq, where my client was never advised of the right to apply for asylum. And the Board just said, Saddam Hussein is gone, we can't imagine why anyone would be afraid of returning to Iraq. And this was the day that the three people on the bridge were murdered, burned, and strung up from the bridge. And the Board said they couldn't imagine. Well, they shouldn't have to imagine, we should have an option. Let me pose two problems to you that I see with your argument so that you can respond to them. The first problem is that the record is really pretty devoid of any indication that your client had any difficulty with the Taliban, as contrasted with the Russian government, which was who was in power and whom he was fighting at the time he left Afghanistan in 1989, well before the Taliban came to power. That's problem number one. Problem number two is that this case is not like Casio, in that in that case, the BIA never considered the merits and effect of the asylum or withholding claims, but rather substituted for that analysis a new country condition report without warning or an opportunity to be heard on it. Here, unlike that, the BIA affirmed and adopted the IJ's decision on the merits of the asylum and withholding claim, and simply considered the change in the government of Afghanistan on the motion to reopen. Okay, and here we had a motion to remand, and what I would submit, and you may have to extend, Castillo, Viagra, that let's say that the original asylum claim was denied and rightfully denied. Yes, because you don't appeal that, basically, so we got to assume that that was correct. While we're up at appeal at the BIA, there was a change in circumstances, and this was briefed in November of 2001. You know, at the time, the board was having difficulty getting its mail because of the anthrax scare. Things were just very unstable, and I would submit to this court, it's possible that circumstances can change so much that you may go from a bad asylum claim to a good asylum claim, and I would submit to this court, I don't doubt that, but the only basis upon which you asked the BIA to reopen or to remand was that 9-11 occurred, and there may be repercussions in Afghanistan. I mean, that was it. So that's, well, but, you know, now we're looking back at the time the BIA acted and whether its decision was correct or not. And that's the only basis to this day in the record, because it would be very inappropriate for us to say, well, the conditions have changed again, for example. We're not the BIA. The conditions may change again. Well, they may, but the point is what was before the BIA, and the only thing I can see that was before the BIA was that 9-11 had occurred, and there may be repercussions in Afghanistan. Now, the question is, how do you connect that general instability, the prospect of general instability, with an individualized problem for your client? That is correct, and it is such a moving target. How do we individualize it unless we are before the judge or even perhaps if the board said, we invite you to send us some things if you would think that this would help. Well, without a proffer, how can we tell that it would make any difference? I'm sorry, Your Honor? Without a proffer, without some indication of an individualized impact of generalized unstable conditions, how can we say there was any problem? Sometimes things have just generally changed so much, and it is still violent, still unstable. Now, he may have problems based upon one of the five protected grounds. He may not. This case was briefed in November 2001. The decision was made 18 months later in February of 2003. What are you telling us, though, that's specific to his case under these changed conditions? Right now, nothing. It isn't in the record. We haven't had an opportunity to develop it. That's all we're saying. And it's such a moving target. We should remand every case where there's a change of circumstances after the board is active? Is that what you're telling us? Yes. I've anticipated that question, thought hard about it. And I'll, quite frankly, have to say, yes, if there is a major circumstance, if you have an asylum claim based in Iraq on Saddam Hussein, Saddam is gone. There's different background circumstances, and there may be, you know, there may be or may not be an asylum claim, but out of necessity, any asylum claim will have changed. The stage has been set. There's no precedent for that position, though, is there? There's no case that still holds, is there? Well, our submission is that Castillo-Viagra says that. And that there's a change in circumstances, a substantial change. The stage has, you know, the scenery on the stage has changed. And you have to have that stage in order to make an asylum claim. Well, which of the protected grounds under the asylum theory is he claiming was the cause of his distress when he was in Afghanistan? Well, I think at first it was... He was a Mujahideen working against the Russians, and the Russians didn't like him. That's political. Russians are gone. So what was his... Well, also in Afghanistan. No, they're not coming over here. I'm sorry? I mean, if we say this is one of the protected grounds for asylum. We're saying that he has to have an opportunity to present his claim. That claim hasn't been presented. The board ruled upon events in 2003, which was last briefed in 2001. Things have radically changed. And when there is such a radical change, cases in the pipeline out of necessity. They have that different stage. We don't have a global grounds for claiming asylum because you live in a country that's out of control. Mobs are running loose or whatever. You have to have... That's the reason why the individual claiming asylum fears that he will be persecuted by the party in power. Precisely, we agree, and all we ask is an opportunity to show that. And now sometimes on the grounds of what it can be, this court has issued case law. Like where they now say ethnicity, because race, religion, sometimes politics. I believe there was a footnote in Balboa versus Ashcroft on that, that many times in the Middle East, although this is the Far East, this can get very confusing. And to have an opportunity to present that is all that we ask. All right. You want to save a few seconds for a rebuttal? Five seconds? Sure. Thank you, Your Honor. May it please the court, I'm Robin Bly, I represent the Attorney General in this matter. I'm going to try and be as brief as possible so you don't have to listen to my voice. He was on notice that the change of country conditions were at issue. He raised them in his motion to reopen to the board. On page 10 and 31 of the record, he indicated, you know, the change of country conditions in the Taliban, in Afghanistan, the Taliban, and his fear based on September 11th. This court has stated that legislative facts don't need to be given, an alien doesn't need to be given notice of legislative facts. The facts that the board took notice of were the fact that the Taliban was removed from power in Afghanistan and that an interim government had been established. Those weren't debatable facts. They were undisputed that those things happened. There was nothing that indicated. Well, of course, what Castillo says is that you're also entitled to make a showing that even with those changed country conditions, you might still face a well-founded fear of persecution. Well, Your Honor, he did raise his cat claim as well in those motions. And the board found that he hadn't articulated a claim under that, that it wasn't likely that he would be harmed or anything. Well, a cat has to do with torture, which is different from persecution. So you could easily not have a cat claim, but nevertheless have a withholding claim, yes? That's true, Your Honor. But he has basically – they have waived the asylum and withholding claims by not raising them in their opening briefs. Well, how do you distinguish the Castillo message that the petitioner's entitled to notice that they're going to be considering? Well, Your Honor, our reading of Castillo is that if it's a legislative fact, it doesn't need to be – they don't need to be given notice of that. If it's something undisputed, like the two things that the board took notice of in this case, then he wouldn't have – they wouldn't have to. I don't understand that read. I think it's distinguishable, but I don't understand that read. And I've forgotten whether that case involved El Salvador or which country, but the point is the government – the persecuting government had completely changed. That was a legislative fact that wasn't in debate. But we nevertheless said the individual alien may still have cause for fear from the same group. Even though the government's changed, these people may be there and the government can't control them, so you ought to have a shot at explaining it. Well, Your Honor, there's no real clear indication what fear he had of the Taliban. Okay. I mean, he left six years before – Well, that's a different issue, so that's the answer. He left six years before the Taliban came into power in Afghanistan. He left in 1988, and my understanding is that the Taliban took power in 1994. There's no indication what he feared of them, other than what maybe every other Afghani feared of the Taliban at the time. But there's no indication that he would have been singled out or he would have had any problems if he'd gone back. But he didn't go back during that time. They're no longer in power, and so that's basically not an issue at this point. At this point, there's a new government in place. He hasn't indicated any fear of that. So, I mean, governments change, and unfortunately his case wasn't heard when the Russians were in power at the time, who was what he really feared. I mean, really, we're just saying that there was no due process violation, that he had the notice that he needed. He raised the country conditions in his motion to reopen – excuse me – on pages 10 and 31 of his separate briefs, September 2001 and November 2001. He was unnoticed of the change of country conditions, and we would say that there was no due process violation here, and we would ask that the petition for review be denied. Okay, thank you. Thank you. Mr. Polanski, anything further? No, I'm ready to submit it. Okay. Thank you, counsel. The matter just argued will be submitted. And we'll next hear argument United States v. Roberts.
judges: Goodwin, Cudahy, Rymer